IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

KARTELL WASHINGTON,           )
                              )
        Plaintiff,            )
                              )
    v.                        )   CIV. NO. 2:17-cv-764-ECM
                              )            (WO)
STATE OF ALABAMA, DEP'T       )
OF CORRECTIONS, *et al.*,     )
                              )
        Defendants.           )

**<u>MEMORDANDUM OPINION AND ORDER</u>**

This cause comes before the Court on the motion of Defendants Alabama Department of Corrections ("ADOC"), Assistant Commissioner Gwendolyn Mosley, and Warden Cynthia Stewart (collectively, "the Defendants")[1] for summary judgment. (Doc. 38). Plaintiff has filed a Response in opposition to the motion (Doc. 43). Having reviewed the motion, the parties' briefs[2], and the relevant legal authority, and for the reasons that follow, the Court finds that Defendants' motion for summary judgment is due to be GRANTED.

---

[1] Defendant Brandon McKenzie is not a party to this motion. Defendant McKenzie notes that his name is incorrectly spelled as "McKensie" in the Complaint. (Doc. 7 at 1, n.2). The Court notes that the Complaint (Doc. 1) and Answer (Doc. 7) both incorrectly spell Defendant Mosley as "Mosely," which continues through most of the parties' filings.

[2] The parties are reminded of the Court's order that "[i]n all briefs filed by any party relating to the [dispositive] motion, the discussion of the evidence in the brief must be accompanied by a specific reference, by page and line, to where the evidence can be found in a supporting deposition or document." (Doc. 23, pp. 1-2).

## I. JURISDICTION AND VENUE

Subject matter jurisdiction is conferred by 28 U.S.C. § 1331 as to Plaintiff's federal causes of action, and the Court may exercise supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367. The parties do not contest personal jurisdiction or venue, and there are adequate allegations to support both. *See* 28 U.S.C. § 1391.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(a). The Court views the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmoving party. *Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 820 (11th Cir. 2010).

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for the motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This responsibility includes identifying the portions of the record illustrating the absence of a genuine dispute of material fact. *Id.* Alternatively, a movant who does not have a trial burden of production can assert, without citing the record, that the nonmoving party "cannot produce admissible evidence to support" a material fact. FED. R. CIV. P. 56(c)(1)(B); *see also* FED. R. CIV. P. 56 advisory committee's note ("Subdivision (c)(1)(B) recognizes that

a party need not always point to specific record materials.... [A] party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact.").

If the movants meet their burden, the burden shifts to the nonmoving party to establish - with evidence beyond the pleadings - that a genuine dispute material to each of its claims for relief exists. *Celotex Corp.*, 477 U.S. at 324. A genuine dispute of material fact exists when the nonmoving party produces evidence allowing a reasonable fact finder to return a verdict in its favor. *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001).

## III. BACKGROUND

The Plaintiff was an inmate at Fountain Correctional Facility in "E-Dorm," the segregation dormitory. (Doc. 39-1 at 1). On November 7, 2015, inmates in the E-Dorm engaged in a riot. *Id.* "Several inmates had their faces wrapped with T-shirts in the dorm and [were] observed with inmate-made knives and broken broom handles for weapons." *Id.* The Southern Correctional Emergency Response Team ("CERT") was deployed to end the riot. The CERT used "chemical agents" and extracted 61 inmates from the E-Dorm in "flex cuff" restraints.

On November 7, 2017, the Plaintiff filed a Complaint in this Court against the ADOC, Mosley, Stewart, and McKenzie.[3] In his Complaint, the Plaintiff alleged that Defendant McKenzie "wrongfully accused the Plaintiff of starting the riot." (Doc. 1 at ¶ 8). The Plaintiff claimed that during the riot, he suffered injuries when "a number of the guards including most of the Riot Squad pushed him to the floor and started hitting the Plaintiff in the head, back and legs." (Doc. 1 at ¶ 10). It is undisputed that following the riot, ADOC moved the Plaintiff to a different correctional facility. (Doc. 1 at ¶ 12; Doc. 39-1 at 2). The Plaintiff has not alleged or offered evidence that Mosley or Stewart were in any manner involved in the alleged beating.

In his four-count Complaint, the Plaintiff alleges as follows:

1. The Plaintiff claims that he was

> denied both substantive and procedural due process rights granted by the Civil Rights Act of 1964, as amended, 42 USC Sections 1983, 1981, 2000e along with the guarantees of the U.S. Constitution - 14th and 1st Amendments, related to wrongfully accusing the Plaintiff of instigating the November, 2015 riot, when he did not have anything to do with starting said riot. The Plaintiff objects to not being given any opportunity to defend himself or claim and prove his innocence or have DOC to better investigate the events…

---

[3] The Plaintiff also named "The DOC Riot Squad" as a defendant. (Doc. 1 at ¶ 4). However, after the Plaintiff failed to serve the Riot Squad with service or show cause why they should not be dismissed, the Riot Squad was dismissed pursuant to FED. R. CIV. P. 4(m), (Doc. 17).

2.    The Plaintiff claims that he was "subjected to 'cruel and unusual treatment & Punishment' by the named Defendant guard(s) and their supervisors in violation of 42 USC Sections [sic] 1983…"

3.    The Plaintiff purports to seek personal injury damages from a list of state court claims including:

      1. Multiple acts of Harassment;
      2. Multiple Acts of Assault;
      3. Mental Anguish;
      4. Intentional Infliction of Emotional Distress;
      5. Outrage;

4.    The Plaintiff claims that "that DOC does not properly train, supervise or monitor its managers, supervisors, guards, officers, riot squad, etc.," and that as a result, "he has been denied his civil rights and subjected to "cruel and unusual treatment & punishment" by the named Defendant guard(s) and their Supervisors in violation of 42 USC Sections [sic] 1983…"

(Doc. 1 at 8 – 10).

## IV.   DISCUSSION

### A. Due Process

In his Complaint, the Plaintiff generally asserts claims for substantive and procedural due process violations and then lists a string of federal statutes and constitutional amendments.[4] As to the Plaintiff's due process claims, the Defendants

---

[4] The Plaintiff specifies that his due process rights were violated and references 42 U.S.C. §§1981 and 2000e (Title VII).  Section 1981 prohibits discrimination and retaliation on the basis of race. Causes of action brought under Title VII are limited to discriminatory and retaliatory practices in the employment context.  The Plaintiff brings neither a race discrimination claim nor a claim arising out of an employment relationship.  Accordingly, neither of these two statutes is implicated by Plaintiff's due process claims.

argue that "[t]here is no evidence that any of these Defendants had anything to do with accusing the plaintiff of starting the riot" and that "[a]lthough defendant Mackenzie did accuse the plaintiff of inciting the riot, the plaintiff was never subjected to any disciplinary sanctions and therefore due process was never implicated." (Doc. 38 at 3). The Defendants offer no authority in support of this argument, and the Plaintiff's response in opposition to Defendants' motion for summary judgment does not address due process. This Court is not under a duty to exercise imagination or conjure what a party might have argued, but did not argue; nor is this Court obliged to do Plaintiff's (or his counsel's) work. *Resolution Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. *Blue Cross & Blue Shield v. Weitz,* 913 F.2d 1544, 1550 (11th Cir.1990).").

To the extent the Plaintiff has alleged denial of due process as to prison disciplinary action, the Eleventh Circuit stated that

> [t]he Supreme Court in *Wolff* [*v. McDonnell*, 418 U.S. 539, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974)] outlined the specific hearing procedures that prison disciplinary panels must comply with to satisfy the standards of procedural due process in the prison setting. *Id.* at 556, 94 S.Ct. at 2975 ("Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply."). *Wolff* instructed that prisoners must receive: (1) advance written notice of the charges against them; (2) an opportunity for the inmate to call witnesses and present documentary evidence, so long as doing so is consistent with institutional safety and

6

correctional goals; and (3) a written statement by the factfinder outlining the evidence relied on and the reasons for the disciplinary action. *Id.* at 563–67, 94 S.Ct. at 2978–80.

*O'Bryant v. Finch*, 637 F.3d 1207, 1213 (11th Cir. 2011).  The Plaintiff failed to plead in his Complaint or respond in his objection to the motion for summary judgment that he was subject to any prison disciplinary proceedings as a result of the riot.  There is no evidence before this Court to support the Plaintiff's allegation that he was denied any due process in regard to prison discipline.

The Plaintiff also alleged that he was denied due process in regard to a claim he filed with the State of Alabama Board of Adjustment. (Doc. 1 at ¶ 35). Specifically, the Plaintiff states that "the Board of Adjustments [sic] wrongfully dismissed the Plaintiff's attempted Complaint for reasons unknown to the Plaintiff or the undersigned legal counsel…." (Doc. 1 at ¶ 18).  The Plaintiff has not named the Alabama Board of Adjustment as a party to this action.  At best, it appears that the Plaintiff has alleged that ADOC Defendants "thwart[ed] his efforts to be heard on this matter earlier for not allowing the Plaintiff's timely filed State of Alabama Board of Adjustments [sic] Claim to proceed and be satisfied in accordance with the Plaintiff's verified injuries and lingering mental and physical personal injuries." (Doc. 1 at ¶ 35).  Plaintiff offers no allegation, evidence, or argument to support his bare allegation that the ADOC Defendants interfered with the disposition of his claim before the Alabama Board of Adjustment.

In regard to due process with the Alabama Board of Adjustment, the Eleventh

Circuit has held that such claims do give rise to a property interest subject to the

statutory rules securing those interests. *Med. Laundry Serv., a Div. of Oplco, Inc. v.*

*Bd. of Trustees of Univ. of Ala., Birmingham*, 840 F.2d 840, 842 (11th Cir.),

*amended,* 856 F.2d 128 (11th Cir. 1988). However, the Eleventh Circuit specifically

noted that

> The language of the Alabama statute directs the Board of Adjustment
> to determine the amount of damage and directs the treasurer of the state
> of Alabama to pay pursuant to the awards of the Board. Ala. Code § 41-
> 9-68(a), § 41-9-72 (1975). The State has referred us to no authority
> suggesting that the Board of Adjustment makes determinations in a
> completely arbitrary manner, and we see no reason to assume that it
> does.

*Id.* at 842. Further, the Eleventh Circuit stated that

> The law is clear that decisions of the Board of Adjustment are not
> appealable. *Moody v. University of Alabama,* 405 So.2d 714 (1981).
> The fact that its decisions are not appealable does not mean that the
> Board does not conduct its business in a fair and reasoned manner.

*Id.* at 842, n.1. The fact that the Plaintiff submitted a claim to the Alabama Board

of Adjustment and received a dismissal of his claim does not negate the fact that the

Plaintiff received the process to which he was entitled under the governing statutes

for the Board of Adjustment. Accordingly, the Defendants' motion for summary

judgment as to Count I of the Plaintiff's Complaint is due to granted.

**B. Excessive Force and State Law Claims**

The Plaintiff asserts that he was subjected to "cruel and unusual treatment &

punishment by the named Defendant guard(s) and their supervisors in violation of

42 USC Sections [sic] 1983, where he suffered life-altering injuries that he still to

this date has not fully recovered from." (Doc. 1 at ⁋ 37). The Court construes this

claim to arise under the Eighth Amendment.

In the context of this case, "[t]he Eighth Amendment can give rise to claims

challenging … the excessive use of force, …." *Thomas v. Bryant*, 614 F.3d 1288,

1303-04 (11th Cir. 2010). The Plaintiff's Eighth Amendment claim arises out of

force used against him during a prison riot. In order for the Plaintiff to prevail, he

must make

> an objective showing of a deprivation or injury that is sufficiently
> serious to constitute a denial of the minimal civilized measure of life's
> necessities and a subjective showing that the official had a sufficiently
> culpable state of mind. Both of these inquiries are contextual. Because
> the Eighth Amendment draws its meaning from the evolving standards
> of decency that mark the progress of a maturing society, the objective
> harm inquiry is contextual in that it is responsive to contemporary
> standards. Additionally, what is necessary to show sufficient harm and
> what is necessary to show a sufficiently culpable state of mind varies
> with the type of Eighth Amendment claim at issue.
>
> For example, … excessive force claims … require a showing of a
> heightened mental state – that the defendants applied force maliciously
> and sadistically for the very purpose of causing harm.

*Id.* at 1304 (internal citations and quotations omitted).

The Defendants argue that

> it is completely undisputed and uncontroverted that no force was used
> by either defendant Mosley or Stewart. There are simply no facts to
> support this conclusion, and the plaintiff does not even attempt to allege
> that these two defendants used any excessive force. Since there is no
> indication at all that [Mosley] or Stewart attacked the plaintiff, they
> cannot possibly be liable to the plaintiff for excessive force. Likewise,
> any state law tort claims for personal injury as a result of the alleged
> beating must fail as well. Since there is nothing upon which to base any
> claims against [Mosley] or Stewart for excessive force or other torts,
> summary judgment is due to be entered in their favor on these counts.

(Doc. 38 at 8-9).

In his Response, the Plaintiff argues that he "believes both Warden Stewart and Assistant Commissioner [Mosley] could have prevented him from being beaten and further harassed by a member of the Riot Squad – Defendant Sergeant [McKenzie]." (Doc. 43 at 1). However, the Plaintiff offers no evidence or legal authority in support of this position. The Plaintiff's subjective belief that the Defendants "could have prevented" the alleged beating belies the fact that he has failed to produce any evidence that the Defendants used excessive force or any force at all in support of his Eighth Amendment excessive force and state-law claims of harassment, assault, intentional infliction of emotional distress, or outrage.[5]  It is

---

[5] The Plaintiff listed "Mental Anguish" as a state-law cause of action under Count III of the Complaint. (Doc. at ¶ 40). However, mental anguish is a form of damages, not a cause of action. *See Pennsylvania Nat. Mut. Cas. Ins. Co. v. Snider*, 607 F. App'x 879, 881 (11th Cir. 2015) ("Emotional distress and mental anguish are not causes of action but rather types of injury.").

well established that once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). Further, "mere conclusions and unsupported factual allegations, as well as affidavits based, in part, upon information and belief, rather than personal knowledge, are insufficient to withstand a motion for summary judgment." *Ellis v. England*, 432 F.3d 1321, 1327 (11th Cir. 2005). The Defendants have presented a properly supported motion for summary judgment, and the Plaintiff has responded with mere conclusions and unsupported factual allegations. Accordingly, the Defendants' motion for summary judgment is due to be granted as to the Plaintiff's claims of excessive force and all state-law claims.

## C. Supervisory Liability

In Count IV of the Plaintiff's Complaint, he alleged that

> he has been denied his civil rights and subjected to "cruel and unusual treatment & punishment" by the named Defendant guard(s) and their Supervisors in violation of 42 USC Sections [sic] 1983, where he suffered life-altering injuries that he still to this date has not fully recovered from. The Plaintiff further alleges that DOC does not properly train, supervise or monitor its managers, supervisors, guards,

officers, riot squad, etc., and that as a direct result of this lack of training and supervision, the Plaintiff suffered significant personal injuries, that he still suffers from to this date.

(Doc. 1 at ¶ 43).  The Defendants argue that "[t]o the extent the plaintiff is suing these defendants in a supervisory capacity, this claim also fails." (Doc. 38 at 3).

The Defendants cite to *Mandel v. Doe*, 888 F.2d 783 (11th Cir. 1989), in which the Eleventh Circuit noted "Section 1983 liability may not be premised solely upon a *respondeat superior* theory—i.e., a county may not be held liable solely by virtue of the employment relationship linking it to the offending employee. Rather, only deprivations undertaken pursuant to governmental 'custom' or 'policy' may lead to the imposition of governmental liability." *Id.* at 791 (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694, 98 S. Ct. 2018, 2037–38, 56 L. Ed. 2d 611 (1978))("[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.").

"It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (quoting *Hartley v. Parnell,* 193 F.3d 1263, 1269 (11th Cir. 1999)

(internal quotation marks and citation omitted)).  In the Complaint, the Plaintiff alleged that "Defendant DOC guards did not follow its own standard administrative rules or correctional facility procedures in this matter," (Doc. 1 at ¶ 24), but the Plaintiff has not identified or described any custom or policy or departure therefrom which resulted in his alleged constitutional deprivation.  The Plaintiff has not alleged that the Defendants were deliberately indifferent to the actions of McKenzie or any other member of the CERT. *See Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cty., Fla.*, 402 F.3d 1092, 1116 (11th Cir. 2005)("A failure to adequately train municipal [jail] employees constitutes an actionable policy or custom for § 1983 purposes 'only where the failure to train amounts to deliberate indifference to the rights of persons with whom the [employees] come into contact.' [*City of Canton v. Harris*, 489 U.S. 378, 388 (1989).]").  Moreover, the Plaintiff's Complaint does not allege that any Defendant other than McKenzie had any involvement with the Plaintiff until after the riot and alleged assault were over.  Accordingly, the Defendants' motion for summary judgment is due to be granted as to the Plaintiff's claims under § 1983.[6]

---

[6] Defendants also argued that they were entitled to qualified immunity from § 1983 liability for excessive force.  However, because the Court finds that the Defendants are otherwise entitled to summary judgment as to all the Plaintiff's § 1983 claims and state-law claims, the Court pretermits discussion of that argument.

## V.    CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the Defendants' motion for summary judgment is

**GRANTED** as to Defendants Alabama Department of Corrections, Assistant

Commissioner Gwendolyn Mosley, and Warden Cynthia Stewart on all counts.

DONE this 21st day of June 2019.

_____/s/ Emily C. Marks_____
EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE
